# W. H. Hines and E. P. Cosgrove, Appellants, *v.* The Kingston Coal Company.

*Land law—Roads—Patents.*

After the state has granted lands to abut on a public highway, it has no power to grant the soil of the highway to another person.   The title of the original grantee extends to the middle of the highway, as in the case of ordinary private grants.

*It seems* that there is no authority under the land law to patent lands appropriated to public highways.

Argued April 12, 1898.   Appeal, No. 338, Jan. T., 1897, by plaintiffs, from judgment of C. P. Luzerne Co., Feb. T., 1892, No. 132, on verdict for defendant.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Trespass to recover damages for the transportation of coal through underground workings across a strip of land claimed by plaintiffs.   Before SAVIDGE, P. J., of the 8th judicial district, specially presiding.

The facts appear by the charge of the court which was as follows :

This is an action of trespass, wherein the plaintiffs, William H. Hines and E. P. Cosgrove, claim damages from the Kingston Coal Company, defendant, for the transportation by the latter of coal, through the underground workings and across a strip of land claimed by the plaintiffs.

Under the evidence there is no question that the defendant did transport, carry across the land in question, a large quantity of coal, during the time claimed for, covered by the plaintiff's declaration and testimony ; and we may assume for the purposes of this case, that according to the usual price paid for transporting coal under similar circumstances, the amount of damages would be several hundred or possibly thousands of dollars, and it would, perhaps, be your duty to find a verdict for the plaintiffs, in accordance with their testimony as to the amount of damages, if it were determined that the land in question belonged to them.

In order to maintain their right of action, it devolves upon
the plaintiffs to show title to the land upon which they allege
the defendant trespassed.   They have offered a patent deed,
dated May 15, 1891, for a strip of land two rods wide, lying on
the western side of the township line, between the townships of
Kingston and Plymouth ; bounded by that line on the east and
extending from the Susquehanna river on the south to what is
known as the eight-rod road on the north, a distance of six hun-
dred and eighty rods more or less.   This patent was, of course,
preceded by an application in due form, and a survey.   For the
purposes of this case we assume that everything in connection
with the procuring of this title was regular.   This strip of land,
it is claimed, is part of a public road, which, perhaps, existed on
the ground prior to the adjudication by the commissioners
appointed under the act of 1799 to settle the differences between
the parties then claiming these lands respectively, under what
is known as the Pennsylvania Title and the Connecticut Title.
It is claimed by the plaintiffs that a strip of land four rods wide,
two rods lying upon either side of this township line, half in
Kingston township and half in Plymouth township, was then
appropriated by the state to the public use as a highway, and
that the lands granted to the different claimants by the state,
pursuant to the certificate of the commissioners, thus lying
immediately west of this township line, were bounded on the
east side by this four-rod road; or, in other words, did not go
as far as the defendant claims it did, to the township line, and
that, therefore, the title to this two rods lying immediately west
of the township line, extending from the river Susquehanna to
the extreme northern end of the division line, did not pass out
of the commonwealth—that the state still retained the title, the
ownership of the soil in that strip of land, subject to the rights
of the public to use it as a public highway.

As I stated, a portion of this strip of land, the southern por-
tion, extending to the eight-rod road, and not beyond that, is
claimed by these plaintiffs ; and the action here is to recover
for the trespass upon that portion of the strip claimed to be
owned by the Kingston Coal Company, extending from the
eight-rod road in a southerly direction along what are known as
the Sarah Grubb tracts, or certified pieces Nos. 41 and 42, and the
upper tier of house lots Nos. 23 and 24, and down a considerable

distance beyond the northern line of the Pierce survey. If the state did not part with her title when she conveyed these lands to the original grantees, and if it be within the meaning of the land law that she may convey by patent to the parties applying in due form, the fee to a public way, such as this way—to lands appropriated originally for the purposes of a public highway—then it would become a question for the jury to say in passing upon other features of the case, whether the plaintiffs are entitled to recover, and if so, in what sum. But in this case serious and difficult questions of law have been raised by the defense, and, as I view it, it becomes my duty to determine the law under those questions, thus relieving you from all responsibility in the matter. If my conclusions, as to the law, are wrong, the parties who are prejudiced thereby will have an easy remedy by appealing the case to the Supreme Court, and having the questions of law determined and settled once for all. In deciding the case on the legal propositions I have to assume that the calls of the survey, returned to the land office by the commissioners, and upon which the subsequent patent to those original grantees were based, are for a four-rod road, one half of which lies upon the western or Plymouth side of the township line. The plaintiffs' case is based upon the assumption that that road was either upon the ground before this adjudication by the commissioners under the act of 1799, or that it was, upon their certificate, by the state appropriated to the use of the public, at the time of these original grants to the parties mentioned. [In the construction of a private grant of land, calling for a public road, it is the law in this state, and, so far as I know, the law generally throughout the United States, that the grantee takes to the center of the road, subject to the easement, the right of way, of the public to the use of the road as a thoroughfare. It is contended that a different rule applies in the case of a grant by the state. That question has not been decided in Pennsylvania, so far as any of us have been able to discover. It is a very important question to the people of the entire commonwealth, perhaps, but especially to the people of this community, who own the lands of the seventeen townships, which originally comprised the Connecticut settlement in Pennsylvania; because, I understand there are many roads of this character—many long strips of land that have been considered

of proper width and in proper location for roads thus appro-
priated by the commissioners—and it is quite probable that,
although this is the first case raising this precise question, it
may not be the last; and I have not come to a conclusion with-
out considerable reflection, nor, am I clearly satisfied that I am
beyond a doubt correct in the conclusion I have reached. I am
simply using my best judgment from the light I have, as to
what the law governing the proposition is.] [1]  [I can see no
reason why a contract between the state and its grantees should
not be construed according to the same rules applicable to a
private grant.  There seems to be no good reason that different
methods of construction should be resorted to in the two cases.
There is one authority that contracts between the state and a
private individual are to be construed as private contracts are
construed.  That has been held in the construction of charter
rights, where the contract was between the state and a corpora-
tion.  As I said, I see no reason why it should not be extended
to the case of a contract between the state and an individual
for the sale of lands.  There seems to be, on the other hand,
every reason why there should be the same construction, and I
base my reasons principally upon public policy.] [2]  [If the
state may call for a public road in her grant and retain title to
the land covered by the road, it seems to me it would work
great injustice and no inconsiderable confusion.  Because she
may afterwards abandon part of the public way, vacate a strip
on one side or the other, or on both sides, convey that strip—
patent it—to the first applicant who comes along, and thus cut
off from egress to the public way the original grantees, and
those who claim under them, and who, we may presume, bought
upon the faith that they were abutting upon a public way,
through which they would always have means of ingress and
egress.  That very thing may be done in some of the towns,
boroughs and cities of this community.  Because, as I gather
from the evidence in this case, those roads were laid out in strips
averaging, perhaps, about four rods wide—much more ground
than is thought necessary now to devote to purposes of public
highways, and the councils of the boroughs or the cities would
be under necessity of narrowing those streets and thus vacate,
so far as the public use was concerned, a portion of those ways,
and it would lead to the results I have called your attention to.

Or, if that were not done, and the state retained the title to the soil of the public ways, or the land which she had appropriated to that purpose, whether actually occupied as a public way or not, if she had the right in the case of a public way to grant that soil to any applicant other than the abutter upon the street or road, we would have the anomaly of one man owning a lot abutting on the road, and another man owning the soil of the road, and the abutter would be cut off from all privileges and rights, such as are usually incident to properties abutting upon the public highways—could not make use of the streets or any portion of them, even by permission of the authorities, for piling building material thereon, could not plant shade trees along or upon the highway between the sidewalks and pavements and the driveways, could not construct vaults underneath the pavement, or make any use whatever of the streets or thoroughfares not inconsistent with the right of the public to travel upon it. Other reasons could be added why it would seem manifestly inequitable that the state, after having granted lands to abut on a public highway, should be permitted to convey the soil of the highway to another. It seems to me, therefore, that it is against public policy to determine this question with the plaintiffs; and principally, for that reason I have concluded to hold, and do hold, as a matter of law, that the title to the grantee extended to the middle of the highway, as in the case in any private grant.] [3]

Another question arising is: Whether there is any authority under the land law to patent lands appropriated to public use— roads? I do not believe that it is within the general scheme or intention of the land laws, that the soil of a public road may be patented out by the state. I do not believe they can be considered vacant land. I do not think they are unappropriated— they are not empty and unoccupied—have been appropriated to and for that purpose. The very patent upon which the plaintiffs claim, would indicate that it was not the intention, the scheme of the land law, to patent out public roads; [that the officials of the land office, who represent the state, did not understand that they were in this instance, conveying title to one of the public roads of the commonwealth, because they here reserve six per cent for public roads. It seems to be an anomaly that they would grant a strip of land which was already appropriated to that purpose, dedicated as a public road, and then

reserve out of that very public way six per cent for public roads. And this is done, too, by virtue of an act of assembly, which authorizes an allowance of six per cent for public roads in all patent grants.

On those two propositions I am convinced that the law is with the defendant. Therefore, all that remains for the jury to do, is to return a verdict, under the instruction of the court, for the defendant.] [4]

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* among others were (1–4) above instructions, quoting them.

*John T. Lenahan*, with him *G. Mortimer Lewis, Wm. H. Hines, Edward A. Lynch* and *John G. Johnson*, for appellants, cited Dunham v. Williams, 37 N. Y. 251; Wyoming Coal & Transportation Co. v. Price, 81 Pa. 174; Penna. Canal Co. v. Harris, 101 Pa. 92.

*Andrew H. McClintock* and *Henry W. Palmer*, for appellee, cited Quinn v. Heart, 43 Pa. 337; Eister v. Paul, 54 Pa. 196; Jackson v. Lambert, 121 Pa. 190; Paul v. Carver, 26 Pa. 223; Firmstone v. Spaeter, 150 Pa. 616; Com. v. Penna. R. Co., 51 Pa. 351.

PER CURIAM, May 9, 1898:

There is nothing in this record that would justify us in sustaining either of the assignments of error. A careful consideration of the evidence discloses no disputed question of fact that should have been submitted to the jury, nor any undisputed fact or facts on which a verdict in favor of the plaintiffs could have been sustained. It therefore follows that they have no just reason to complain of anything contained in portions of the charge which constitute the first four specifications.

The learned trial judge was clearly right in holding as matter of law that the title of the grantee, under whom defendant company holds, extended to the middle of the highway, as in the case of ordinary private grants; and hence there was no error in affirming its last point, "that under all the evidence . . . . the verdict must be for the defendant," and in directing the jury to find accordingly.

Judgment affirmed.